FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 21, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LONNIE P.,<br>                    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 2:18-cv-00169-MKD<br><br>REPORT AND<br>RECOMMENDATION TO DENY<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND TO<br>GRANT DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court for issuance of a report and recommendation are the

parties' cross-motions for summary judgment. ECF Nos. 14, 15. The Court,

having reviewed the administrative record and the parties' briefing, is fully

informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

motion, ECF No. 14, be denied and Defendant's motion, ECF No. 15, be granted.

ORDER - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

ORDER - 2

1  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

2  ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

3  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

4  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

5  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

6  *Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

7

8  A claimant must satisfy two conditions to be considered "disabled" within

9  the meaning of the Social Security Act.  First, the claimant must be "unable to

10  engage in any substantial gainful activity by reason of any medically determinable

11  physical or mental impairment which can be expected to result in death or which

12  has lasted or can be expected to last for a continuous period of not less than twelve

13  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

14  impairment must be "of such severity that he is not only unable to do his previous

15  work[,] but cannot, considering his age, education, and work experience, engage in

16  any other kind of substantial gainful work which exists in the national economy."

17  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

18  The Commissioner has established a five-step sequential analysis to

19  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

20  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

ORDER - 3

1    considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

2    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

3    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4    404.1520(b), 416.920(b).

5         If the claimant is not engaged in substantial gainful activity, the analysis

6    proceeds to step two.  At this step, the Commissioner considers the severity of the

7    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

8    claimant suffers from "any impairment or combination of impairments which

9    significantly limits [his] physical or mental ability to do basic work activities," the

10   analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the

11   claimant's impairment does not satisfy this severity threshold, however, the

12   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

13   404.1520(c), 416.920(c).

14        At step three, the Commissioner compares the claimant's impairment to

15   severe impairments recognized by the Commissioner to be so severe as to preclude

16   a person from engaging in substantial gainful activity.  20 C.F.R. §§

17   404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

18   severe than one of the enumerated impairments, the Commissioner must find the

19   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

20

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his limitations, 20 C.F.R. §§ 404.1545(a)(1),

6    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8    RFC, the claimant is capable of performing work that he has performed in the past

9    (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the

10   claimant is capable of performing past relevant work, the Commissioner must find

11   that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the

12   claimant is incapable of performing such work, the analysis proceeds to step five.

13   At step five, the Commissioner considers whether, in view of the claimant's

14   RFC, the claimant is capable of performing other work in the national economy.

15   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

16   the Commissioner must also consider vocational factors such as the claimant's age,

17   education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

18   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20   404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

ORDER - 5

1    work, analysis concludes with a finding that the claimant is disabled and is

2    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

3          The claimant bears the burden of proof at steps one through four above.

4    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

6    capable of performing other work; and 2) such work "exists in significant numbers

7    in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

8    *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9                                    **ALJ'S FINDINGS**

10         On September 16, 2014, Plaintiff applied both for Title II disability

11   insurance benefits and Title XVI supplemental security income benefits alleging a

12   disability onset date of August 30, 2013.  Tr. 19, 275-83.  The applications were

13   denied initially, Tr. 210-16, and on reconsideration, Tr. 220-24.  Plaintiff appeared

14   before an administrative law judge (ALJ) on November 22, 2016.  Tr. 95-137.  On

15   December 22, 2016, the ALJ denied Plaintiff's claim.  Tr. 16-39.

16         At step one of the sequential evaluation process, the ALJ found Plaintiff has

17   not engaged in substantial gainful activity since August 30, 2013.  Tr. 22.  At step

18   two, the ALJ found that Plaintiff has the following severe impairments:

19   osteoarthritis of the bilateral knees (status post surgeries), degenerative disc disease

20   of the lumbar spine, scoliosis of the thoracic spine, bilateral carpal tunnel

syndrome (status post repair on right), pain disorder, major depressive disorder,

and social anxiety.  Tr. 23.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform

sedentary work except:

> [Plaintiff] can lift 20 pounds occasionally and ten pounds frequently.
> He can sit for a total of six hours in an eight-hour workday, can stand
> and/or walk a total of two hours in an eight-hour workday, however,
> can only stand and/or walk at 30-minute intervals, for 30 minutes at a
> time.  [Plaintiff] can only occasionally perform push or pull operation
> with the bilateral lower extremities.  He can never climb ladders or
> scaffolds, never crouch or crawl, and he can occasionally climb ramps
> and stairs, balance, stoop, and kneel.  He can frequently handle,
> finger, and feel with the left dominant hand, he must avoid all extreme
> cold and unprotected heights.  He is able to do simple and routine
> tasks.  He can have superficial interaction with the public and
> occasional interaction with coworkers.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 31.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as, office helper and call-out operator.  Tr. 32-33.  Therefore,

the ALJ concluded Plaintiff was not under a disability, as defined in the Social

ORDER - 7

Security Act, from the alleged onset date of August 30, 2013, though the date of the decision.  Tr. 33.

On March 28, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ properly incorporated the opined limitations into the RFC.

ECF No. 14 at 14.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 14 at 14-15.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's

ORDER - 8

testimony regarding subjective symptoms.[1]  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom."  *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

---

[1] At the time of the ALJ's decision in December 2016, the regulation that governed

the evaluation of symptom claims was SSR 16-3p.  SSR 16-3p; Titles II and XVI:

Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar.

24, 2016).  The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which

was later rescinded in favor of the more comprehensive SSR 16-3p.  Neither party

argued any error in this regard.

ORDER - 9

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record" "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 10

1    The ALJ found that Plaintiff's medically determinable impairments could

2    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

3    statements concerning the intensity, persistence, and limiting effects of his

4    symptoms were not entirely consistent with the evidence.  Tr. 26.

5    *1.  Inconsistent with the Objective Medical Evidence*

6    The ALJ discounted Plaintiff's reported symptoms because they were

7    inconsistent with the objective medical evidence.  Tr. 26-31.  An ALJ may not

8    discredit a claimant's symptom testimony and deny benefits solely because the

9    degree of the symptoms alleged is not supported by objective medical evidence.

10   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947

11   F.2d 341, 346-47 (9th Cir. 1991).  However, the medical evidence is a relevant

12   factor in determining the severity of a claimant's symptoms and their disabling

13   effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

14   Here, Plaintiff argues that the ALJ discounted Plaintiff's claimed disabling

15   symptoms *solely* on the grounds that the reported symptoms were inconsistent with

16   the objective medical evidence and as a result the ALJ erred.  ECF No. 14 at 14-15.

17   As is discussed *infra*, Plaintiff is incorrect.  The ALJ offered two other reasons for

18   discounting Plaintiff's claimed symptoms:  Plaintiff's poor effort at physical

19   therapy and engaging in activities inconsistent with his disabling symptoms claims.

20   Tr.  26-27, 31.  Moreover, Plaintiff's challenge to the ALJ's finding that Plaintiff's

ORDER - 11

claimed symptoms were inconsistent with the objective medical evidence fails for

other reasons as well.

First, Plaintiff failed to cite to any evidence in his opening brief to support

his argument.[2]  ECF No. 14 at 14-15.  In his Reply, Plaintiff discusses for the first

time some of the medical evidence related to Plaintiff's knees, carpal tunnel

syndrome, lumbar condition, and mental health, but Plaintiff again fails to discuss

how the identified evidence establishes that the ALJ erred.  Plaintiff does not

demonstrate that the ALJ's finding that Plaintiff's reported symptoms are

inconsistent with the medical evidence is unsupported by substantial evidence.

ECF No. 16 at 2-4.  By failing to adequately support his argument in his opening

brief and then again in the reply, this challenge is waived.  *See Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining

the court may decline to address the merits of issues not argued with specificity);

_____

[2] Counsel has a duty to substantively brief the issues presented for this Court's

serious and just consideration.  Fed. R. Civ. P. 1; LCivR 1; Wash. Rule of Prof'l

Conduct 1.3.  This Court has previously admonished Plaintiff's counsel for

inadequate briefing, particularly in the opening brief.  *See, e.g.*, *Rainey v. Comm'r*

*of Soc. Sec.*, No. 2:17-cv-00271-FVS (E.D. Wash. Sept. 25, 2018) (Report and

Recommendation, ECF No. 17 at 6-10) (adopted Oct. 11, 2018).

ORDER - 12

1   *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing the court may not

2   consider on appeal issues not "specifically and distinctly argued" in the party's

3   opening brief); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)

4   ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

5   developed argumentation, are deemed waived.  It is not sufficient for a party to

6   mention a possible argument in a most skeletal way, leaving the court to . . . put

7   flesh on its bones.").

8          Second, despite Plaintiff's waiver, the Court reviewed the record and

9   determines that clear and convincing reasons support the ALJ's rejection of

10  Plaintiff's symptom claims.  The ALJ summarized much of the medical evidence.

11  Tr. 26-29.  As to Plaintiff's physical impairments, the ALJ noted that the most

12  recent medical evidence from 2016 reflected normal gait, full strength, no clubbing

13  or cyanosis, and intact cranial nerves—findings generally consistent with the prior

14  medical evidence as well.  Tr. 26-29 (citing, *e.g.*, Tr. 938-40, 974, 984-87, 661,

15  664, 633-37, 904, 764-66).  While Plaintiff did not make any specific arguments in

16  regard to his shoulder condition, the Court notes that the 2016 and 2017 medical

17  records submitted to the Appeals Council reveal that Plaintiff had mild to moderate

18  bursal sided tendinosis of the supraspinatus tendon with mild overlying

19  subacromial subdeltoid bursitis and that Plaintiff's shoulder range of motion was

20  limited.  Tr. 56-57, 44, 46.  However, in addition to failing to develop any

ORDER - 13

arguments related to these medical records and thereby waiving such arguments, *see Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000, Plaintiff did not establish that his shoulder condition was likely to last more than twelve months if he received treatment. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Molina*, 674 F.3d at 1111 (requiring the plaintiff to establish error at steps one through four). Accordingly, on this record, the ALJ rationally discounted Plaintiff's reported physical symptoms as inconsistent with the objective medical evidence. Moreover, the ALJ recognized that Plaintiff has physical limitations and imposed a restrictive RFC limiting Plaintiff to sedentary work and standing or walking for thirty-minute intervals, along with other postural and manipulative limitations. The ALJ rationally incorporated Plaintiff's evidentiary-supported physical and manipulative limitations into an RFC—an RFC that was more physically limiting than was suggested by the medical sources. Tr. 164-66, 191-93, 102-08; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). On this record, the ALJ reasonably discounted Plaintiff's more disabling symptoms claims.

As to Plaintiff's mental impairments, the ALJ noted that, while Plaintiff often presented as depressed and anxious with blunted affect and hesitant speech, Plaintiff's thought process, thought content, perception, memory, fund of knowledge, orientation, and concentration were within normal limits and he was able to follow a conversation and a three-step command. Tr. 29-31 (citing Tr. 461-

ORDER - 14

64, 932-36).  On this record, the ALJ reasonably considered the medical evidence did not support the severity of Plaintiff's disabling symptoms.  This finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with the other identified reasons, *see infra*, to discount Plaintiff's symptom complaints.

### 2.  Poor Effort at Physical Therapy

The ALJ discounted Plaintiff's symptom claims because Plaintiff did not abide by the physical therapy recommendations for his knees.  Tr. 27.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Here, the ALJ highlighted that physical therapy records on multiple occasions indicated that Plaintiff did not have a good recall of his physical therapy exercises and did not seem to have consistent follow through with his home exercises, thereby contributing to the lack of improvement for his knee, back, and wrist symptoms.  Tr. 27 (citing Tr. 660-63, 877-80, 888-95).

Plaintiff challenges one of the medical records—an October 27, 2014 physical therapy note, Tr. 559—cited by Defendant as evidence supporting the ALJ's decision.  ECF No. 16 at 4.  The Court agrees that the October 17, 2014

ORDER - 15

1   record does not support the ALJ's lack-of-effort finding.  However, the ALJ relied

2   on other records to support his lack-of-effort findings.  Tr. 27 (citing Tr. 663 ("Per

3   [physical therapy] notes poor recall and demonstration on recommended home

4   exercises, little progress noted on completion of therapy"); Tr. 888 ("[Plaintiff] had

5   some improved flexibility in the hamstrings but seems to forget his exercises and

6   has been inconsistent with [physical therapy] visits so difficult to make

7   improvements."); Tr. 894 ("He has had postural and movement reeducation along

8   with core strengthening and soft tissue work.  He does not have good recall of his

9   exercises[,] does not seem like he has consistent follow through and has not

10  noticed much improvement in his back pain [symptoms]. His trunk and [lower

11  extremity] strength is good but despite education does not follow through with

12  posture education and [home exercise program].")).  Moreover, the ALJ

13  highlighted that Plaintiff twice thereafter turned down formal physical therapy,

14  stating that he would do (or was doing intermittent) physical therapy at home.  Tr.

15  28 (citing Tr. 904-06).  Therefore, Defendant's citation to the October 27, 2014

16  physical therapy note, Tr. 559, is insufficient to undermine the ALJ's finding that

17  the overall medical record reflects Plaintiff's poor effort at engaging in physical

18  therapy.

19       Next, relying on the opinions of Gregory Charboneau, Ed.D., and John

20  Arnold, Ph.D., Plaintiff contends that his failure to recall exercises and to follow-

ORDER - 16

through with at-home exercises was due to his mental conditions.  ECF No. 16 at

4.  However, Plaintiff failed to raise this issue in his opening brief, ECF No. 14 at

14-15,[3] thus it is waived.  The Court is not to consider arguments seeking relief

that were not asserted and factually supported in the moving brief.  *See Carmickle*,

533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

Moreover, the assertion is not supported in the record.  Plaintiff failed to cite

to any evidence supporting this argument; there is no evidence cited as to what

instruction Plaintiff was given in regard to his home exercise program, how these

instructions were relayed or taught to Plaintiff, and how these instructions were

_____

[3] In support of his challenge to the ALJ's discounting of his symptom complaints,

Plaintiff asserted one ground for error, specifically that his claims were

inconsistent with the objective medical evidence.  ECF No. 14 at 14-15.  Plaintiff

failed to address the ALJ's finding that Plaintiff demonstrated poor compliance

with the recommended treatment.  Instead, Plaintiff only raised this claim—that his

failure to comply with treatment was attributed to his mental-health impairments—

in his reply, responding to Defendant's argument that the ALJ discounted

Plaintiff's symptom claims not only because they were inconsistent with the

medical evidence but also because of Plaintiff's poor effort at physical therapy.

ECF No. 15 at 2-8; ECF No. 16 at 4.

ORDER - 17

such that Plaintiff was unable to understand and carry them out.  *See McPherson*,

125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied

by some effort at developed argumentation, are deemed waived.  It is not sufficient

for a party to mention a possible argument in a most skeletal way, leaving the court

to . . . put flesh on its bones.").  In addition, Plaintiff's argument that he was unable

to understand and carry out the instructions is directly contrary to his decision on

two occasions to turn down formal physical therapy in lieu of doing physical

therapy by himself at home.  Tr. 904-06.

On this record, the ALJ reasonably concluded that Plaintiff put forth poor

effort at following physical therapy recommendations.  This finding is supported

by substantial evidence and was a clear and convincing reason to discount

Plaintiff's symptom complaints.

### 3.  Inconsistent with Activities of Daily Living

The ALJ discounted Plaintiff's symptom complaints because they were

inconsistent with the level of daily activity performed by Plaintiff.  Tr. 26.  The

ALJ may consider a claimant's activities that undermine reported symptoms.

*Rollins*, 261 F.3d at 857.  "While a claimant need not vegetate in a dark room in

order to be eligible for benefits, the ALJ may discount a claimant's symptom

claims when the claimant reports participation in activities that "contradict claims

of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Here, the ALJ

ORDER - 18

noted that Plaintiff advised that he had no problem with personal care, was able to care for his pet, prepare simple meals daily, do laundry, pay bills, count change, shop in stores, and spend time with others daily.  Tr. 26 (citing Tr. 364-71).  On this record, the ALJ reasonably found that Plaintiff's reported mental-health symptoms were inconsistent with his daily activities.  This was a clear and convincing, and unchallenged, reason to discount Plaintiff's symptom complaints.

In summary, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony.

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ for improperly crediting the medical opinion of Dr. Minh Vu.  ECF No. 14 at 15-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to

ORDER - 19

1  the opinions of specialists concerning matters relating to their specialty over that of

2  nonspecialists." *Id.* (citations omitted).

3      If a treating or examining physician's opinion is uncontradicted, the ALJ

4  may reject it only by offering "clear and convincing reasons that are supported by

5  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

6  "However, the ALJ need not accept the opinion of any physician, including a

7  treating physician, if that opinion is brief, conclusory, and inadequately supported

8  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228

9  (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

10  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

11  may only reject it by providing specific and legitimate reasons that are supported

12  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–

13  31).  The opinion of a nonexamining physician may serve as substantial evidence if

14  it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

15  53 F.3d 1035, 1041 (9th Cir. 1995).

16      The opinion of an acceptable medical source such as a physician or

17  psychologist is given more weight than that of an "other source."  20 C.F.R. §§

18  404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other

19  sources" include nurse practitioners, physicians' assistants, therapists, teachers,

20  social workers, spouses, and other non-medical sources.  20 C.F.R. §§ 404.1513(d)

ORDER - 20

(2013).  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  An ALJ is obligated to give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff argues that instead of relying on the opinions of examining sources, the ALJ relied on the opinions of non-examining sources.  ECF No. 14 at 14-15.  Yet, Plaintiff failed to identify what examining medical source opinions the ALJ should have given more weight—likely because there was no acceptable medical source who provided a treating or examining opinion about Plaintiff's physical abilities.  There were three nonexamining opinions from acceptable medical sources about Plaintiff's physical conditions: Dr. Vu, Tr. 102-08; Dr. Howard Platter, Tr. 164-66, 176-78, and Dr. Norman Staley, Tr. 191-93, 204-06; and there were two medical opinions from "other sources":  physician's assistant Marjorie Humphrey, Tr. 457-58, and nurse practitioner Theresa Wrenderhall, Tr. 481-82.  Plaintiff failed to argue or establish any error as to the ALJ's consideration of these opinions, focusing instead on Dr. Vu's opinion.  ECF No. 14 at 15.  Plaintiff

thereby waived any argument in regard to these four other opinions.  *See*

*Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

As to Dr. Vu, Dr. Vu testified as the impartial medical expert about

Plaintiff's physical impairments at the administrative hearing.  Tr. 102-08.  Dr. Vu

diagnosed Plaintiff with bilateral knee conditions, lumbar spondylosis, and carpal

tunnel syndrome (repaired on the left side).  Tr. 104.  Dr. Vu also opined that,

while Plaintiff complained of shoulder pain, Plaintiff did not have a shoulder

impairment.  Tr. 105.  Dr. Vu opined that Plaintiff did not meet a Listing.  Tr. 105.

Dr. Vu limited Plaintiff to occasional lifting and carrying of twenty pounds,

frequent lifting and carrying of ten pounds, frequent climbing of ladders and

scaffolds, no work at unprotected heights or near moving equipment, standing and

walking for two hours a day, sitting for six hours a day, and frequent manipulation

and feeling with his left hand.  Tr. 105-07.

The ALJ gave partial weight to Dr. Vu's opinion.  Tr. 30.  Dr. Vu's opinion

was partially consistent with the other two medical-source physical-impairment

opinions of record, those of nonexamining physicians Dr. Platter and Dr. Staley.[4]

_____

[4]  Each of these physicians agreed that Plaintiff was limited to lifting and carrying

twenty pounds occasionally, ten pounds frequently, standing and walking for two

hours, sitting for six hours, and either no or limited exposure to heights and

ORDER - 22

1  To the extent that Dr. Vu's opinion was inconsistent with the opinions of Dr.

2  Platter, Tr. 164-66, 176-78, and Dr. Staley, Tr. 191-93, 204-06, the ALJ was

3  required to provide specific and legitimate reasons for his weighing of Dr. Vu's

4  opinion.  *See Bayliss*, 427 F.3d at 1216.

5       Plaintiff's sole argument was that Dr. Vu's opinion cannot serve as

6  substantial evidence because it was not supported by the record as "Dr. Vu did not

7  read all the medical records in the exhibits and did not realize that [Plaintiff] had

8  undergone four knee surgeries."  ECF No. 14 at 16.  This argument lacks merit.

9  First, by only citing to a single page of the record, Tr. 107, and not further

10 developing his argument, Plaintiff failed to adequately support his argument that

11 the ALJ erred in weighing Dr. Vu's testimony.  *See Carmickle*, 533 F.3d at 1161

12 n.2; *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (A

13 reviewing court "cannot 'manufacture arguments for an appellant.'") (quoting

14 *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir.1994)).

15 _____

16 machinery.  Tr. 105-06, 164-66, 176-78, 191-93, 204-06.  But while Dr. Vu opined

17 that Plaintiff was limited to frequent manipulation and feeling with his left hand,

18 Dr. Platter and Dr. Staley opined that Plaintiff had no manipulative limitations but

19 was limited in his ability to push, pull, stoop, balance, kneel, crouch, and crawl.

20 Tr. 105-06, 164-66, 176-78, 191-93, 204-06.

ORDER - 23

1    Second, Plaintiff's argument—that Dr. Vu failed to review the record

2  because Dr. Vu did not know that Plaintiff had four knee surgeries—is not

3  supported.  ECF No. 14 at 16.  The cited transcript reflects that Dr. Vu's statement,

4  "I think like two or three, but --," was taken out of context and without an

5  opportunity to complete his sentence or refresh his memory as to the number of

6  knee surgeries.  Tr. 107.  Moreover, Dr. Vu had earlier testified that Plaintiff had

7  arthroscopy on his right and left knees in 2012 and then surgery on the right knee

8  for a meniscus tear in April 2016.  Tr. 104.  Dr. Vu's testimony is largely

9  consistent with Plaintiff's own testimony about his knee surgeries, Tr. 115-17, and

10  the medical record, Tr. 429-30 (Sept. 2010: right knee arthroscopy); Tr. 684-85

11  (April 2011: bilateral knee arthroscopy); Tr. 874-76 (April 2015: right knee lateral

12  meniscus tear surgery).  At the administrative hearing, Plaintiff's counsel had an

13  opportunity to question Dr. Vu and elicit the basis for his opinion and knowledge.

14  Rather than inquire as to whether Dr. Vu was aware of Plaintiff's September 2010

15  right knee surgery, Plaintiff's counsel moved on to the next question about whether

16  Plaintiff's knee condition caused significant pain, to which Dr. Vu agreed and

17  explained that was why he limited Plaintiff to a sedentary position.  Tr. 107.

18    Third, despite Plaintiff's waiver, the Court reviewed the record and finds the

19  ALJ's weighing of Dr. Vu's opinion is supported by specific and legitimate

20  reasons supported by substantial evidence.  The ALJ gave partial weight to Dr.

1    Vu's opinion based on the medical record.  Tr. 30.  Relevant factors to evaluating

2    any medical opinion include the amount of relevant evidence that supports the

3    opinion and the consistency of the medical opinion with the record.  *Lingenfelter v.*

4    *Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn* 495 F.3d at 631.  Here, the ALJ

5    noted that the medical evidence revealed Plaintiff had degenerative disc disease of

6    the lumbar spine, carpal tunnel syndrome, and scoliosis—conditions which caused

7    Plaintiff pain—but also found that the medical records revealed that Plaintiff

8    retained full strength, intact sensation, and normal ambulation and gait.  Tr. 30.

9    While Plaintiff did not make any argument in regard to his shoulder condition, as

10    noted *supra*, the 2016 and 2017 medical records revealed a mild to moderate

11    shoulder condition and limited range of motion, Tr. 56-57, 44, 46.  However,

12    Plaintiff failed to establish that this shoulder condition, if treated, satisfied the

13    twelve-month durational requirement.  *See* 42 U.S.C. §§ 423(d)(1)(A),

14    1382c(a)(3)(A); *Molina,* 674 F.3d at 1111 (requiring the plaintiff to establish error

15    at steps one through four).  It was the ALJ's responsibility to weigh Dr. Vu's

16    opinion against the conflicting medical record.  *See Tommasetti v. Astrue*, 533 F.3d

17    1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving

18    ambiguities in the medical evidence.").  The ALJ rationally determined that Dr.

19    Vu's opinion was both consistent in part and inconsistent in part with the medical

20    evidence.  As a result, the ALJ determined that Dr. Vu's opined limitations were

ORDER - 25

1    not restrictive enough.  For this reason, the ALJ gave partial credit to Dr. Vu's

2    opinion by adding additional restrictions to the RFC:

| Dr. Vu's opined limitations | ALJ's physical RFC |
|---|---|
| Lift twenty pounds occasionally and ten pounds frequently | Same |
| Sit for a total of six hours in an eight-hour workday, stand and/or walk a total of two hours in an eight-hour workday | Same but added:  can only stand and/or walk at thirty-minute intervals, for thirty minutes at a time |
| Frequent climbing of ladders and scaffolds | Never climb ladders or scaffolds, never crouch or crawl, and occasionally climb ramps and stairs, balance, stoop, and kneel |
| Frequent manipulation and feeling with the left hand | Same |
| None | Occasionally perform push or pull operation with the bilateral lower extremities. |
| No work at unprotected heights or nearby moving equipment | Must avoid all extreme cold and unprotected heights |

14    Tr. 25, 30, 105-08.

15        In summary, the ALJ's decision to partially credit Dr. Vu's testimony as

16    being largely consistent with the medical evidence but not providing sufficiently

17    adequate restrictions given Plaintiff's knee and back conditions is legitimate,

18    specific, and supported by substantial evidence.  Moreover, Plaintiff failed to

19    establish harmful error in the ALJ's decision to craft an RFC that was more

20    restrictive than Dr. Vu's—and any other medical provider's or other source's—

opinion as to Plaintiff's physical limitations. *See Stubbs-Danielson*, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

**C. RFC**

Plaintiff faults the ALJ for not incorporating all of his restrictions into the RFC. ECF No. 14 at 16. Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering Plaintiff's symptom claims and the medical opinion evidence. ECF No. 14 at 16. For reasons discussed *supra*, the ALJ's consideration of Plaintiff's symptom claims and the medical opinion evidence is legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of sedentary work with additional functional limitations. *See Stubbs-Danielson*, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes Plaintiff failed to establish that the ALJ's decision was unsupported by substantial

ORDER - 27

evidence or contained harmful legal error.  Accordingly, **IT IS HEREBY**

**RECOMMENDED**:

    1.  Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

    2.  Defendant's Motion for Summary Judgment, **ECF No. 15**, is

**GRANTED**.

    3.  The Court enter **JUDGMENT** in favor of Defendant.

## OBJECTIONS

    Any party may object to a magistrate judge's proposed findings,

recommendations or report within **fourteen (14)** days following service with a

copy thereof.  Such party shall file written objections with the Clerk of the Court

and serve objections on all parties, specifically identifying the portions to which

objection is being made, and the basis therefor.  Any response to the objection

shall be filed within **fourteen (14)** days after receipt of the objection.

    A district judge will make a *de novo* determination of those portions to

which objection is made and may accept, reject, or modify the magistrate judge's

determination.  The judge need not conduct a new hearing or hear arguments and

may consider the magistrate judge's record and make an independent

determination thereon.  The judge may, but is not required to, accept or consider

additional evidence, or may recommit the matter to the magistrate judge with

instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

ORDER - 28

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED March 21, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29